Judge Devena and I are delighted to welcome Judge Goldberg back to the 11th Circuit. Judge Goldberg hails from the United States Court of International Trade. And I say welcome back because Judge Goldberg sits with us from time to time. I think I've had the pleasure of sitting with Judge Goldberg maybe three or four times before. We really appreciate your coming down here from time to time to help us with our cases. Welcome back, Judge. Thank you. Nice to be here. And I see that counsel are ready for the first case. It's United States v. Charles Carroll. And Mr. Rett is here for the appellant. Mr. Jones for the government. And Mr. Rett, you may begin. May it please the court. My name is Seralene DeRett and I represent Charles Carroll in this case. We make a lot of assumptions in everyday life. But those assumptions do not relieve law enforcement officers or the government from their burdens in criminal cases. For instance, we might assume that law enforcement officers can identify child pornography when we see it. But that does not relieve them of the burden of having a neutral and detached magistrate review those images before issuing a search warrant. We might also assume that everyone knows how to use peer-to-peer file-sharing networks. Well, your first issue is that the search warrant fails to meet the particularity requirement of the Constitution. You have a case that says a judge has to view the images herself in order for the particularity requirement to be met. I couldn't find one. Your Honor, there is no case that I know of on point, but we've known since 1986 from the PJ video case that we have to give a reasonably specific description of the images or provide the images. And in this case, what we have is an officer who described a category of information but did not provide the content of those pictures. So what she said was, I have viewed them and they contain child pornography. Isn't there an affidavit that precedes the final determination on the warrant? There is, Your Honor, and in that affidavit, the officer stated that two files of interest were downloaded, that she viewed those files, and she thinks they're child pornography. She did not explain the ages of the people or her belief about the ages of the people in the photos. She did not explain what was happening in the photos. The statute that's cited in the search warrant affidavit talks about sexual exploitation of minors, so it has to be a minor in a sexually explicit position or sexually explicit conduct, and there's no information in the warrant. Isn't there a download about some violent sexual activities? That's correct, Your Honor. There are an agent in this case logged onto a peer-to-peer file sharing network, downloaded two files of what they called files of interest. He provided that to another agent who looked at the files and said, I think they're child pornography. They told the magistrate judge that, and the magistrate judge signed off on the warrant. What about the fact they were able to trace the computer to your client's home, and what about the fact that the computer not only contained child pornography, but a lot of personal information involving your client? That's correct, Your Honor. That came out at trial, but that was not known to the officers at the time that they requested the search warrant. At the time they requested the search warrant, what they knew was that they had downloaded files from that computer. They were able to tie the IP address to that home, right? So they download the files on September 8th. A month later, they go to the magistrate judge and they say, we've downloaded these two files of interest. So that would go to the sufficiency of the evidence argument then? Well, I think it can go to both, Your Honor, but I think in this particular argument, at least, that we've started on, it has to do with the sufficiency of the probable cause in the affidavit. What about, even if you are correct on the probable cause affidavit problem, how do you get around United States v. Leon, the good faith exception to the exclusionary rule? Well, Your Honor, Leon applies in cases where officers object, have an objective, reasonable belief that they can rely on the warrant. In this case, we have a couple of issues. There are exceptions to the good faith exception. One is when the magistrate judge wholly abandons his judicial role. So that goes to my first argument, which is he didn't check to see if there was probable cause. He accepted the conclusions of the officer. And we know that you can't do that. Illinois v. Gates tells us that the warrant, the sufficiency of the warrant has to be reviewed by a judicial officer, not by an investigating officer who is in the pursuit of criminal activity and might have a competitive nature. It needs to be reviewed by a separate, detached magistrate. So that's our first problem with Leon, is that this magistrate wholly abandoned his judicial role. The second issue with Leon is that if the warrant affidavit and the warrant is invalid or it has insufficient probable cause on its face to the point where no officer could rely on it, then Leon doesn't apply. And I think in this case, where you have basically a claim that we downloaded two files of interest, we think they're child porn, I think it doesn't meet the standard there for an officer to say, okay, this is sufficient for a search warrant to be issued. So I don't think Leon could apply. There are also cases that talk about the fact that an officer who applies for the warrant and then is part of the team that executes the warrant should be on notice that the warrant is facially deficient. And the government has cited a case saying, well, there's no per se rule that says you can't apply for the warrant and then rely on Leon. But the United States Supreme Court has said it is somewhat disingenuous to make that insufficient showing in a probable cause affidavit and then later be the officer who relies on it. So I don't think they can rely on Leon in this case. I think, you know, you only have three minutes left. And so I think you're spending a lot of time on your weakest argument. You've got several arguments. Just speaking for myself, I think your strongest argument is your claim that the evidence was insufficient on the distribution charge. What can you tell us about that? I can tell you a few things, Your Honor. The government today and also at trial asks this court and the jurors to assume that because there were files in Mr. Carroll's share folder that he knowingly intended to share those files out. And the government explained this to the jury in closing argument like this. They said, when he leaves it in the share folder, it constitutes leaving it available for other people to get, which is distribution. And I think the statute requires more than that. The government relies on — But your argument is the statute requires that he has to know that when it goes into that file-sharing space, that it's available for others to get it. That's your argument, right? That's correct, Your Honor. And so the evidence that the government is relying on is, well, you knew it with regard to another type of program called FrostWire, so you must have known it with regard to Ares. I don't think there's any evidence in the record that Mr. Carroll knew that he was sharing folders out from FrostWire or from Ares. There's nothing to suggest that this person knew that if I downloaded files into my share folder, they were going out to another user. Why can't the jury infer that he knew? Well, I think the issue there, Your Honor, is the problem with the knowing requirement that we can't — even if the government has a circumstantial case, we can't rely on speculation and conjecture. We have to have more reasonably specific inferences. And I'll point the Court to United States v. Durham from the Eighth Circuit. In that case, it was a case where the defendant pleaded guilty to possessing and receiving child porn through a file-sharing network. And the Court said, even in that case, we can't apply the sentencing enhancement, which has a lower burden of proof and which does not have the knowing requirement, because the government hasn't shown that he intended to share those files out, that he knew they were sharing. Your client testified at this trial, is that correct? He did, Your Honor. What did he say under oath about both possession and distribution? He denied it, Your Honor. He denied that he was familiar with Aries. He denied that he used Aries. And he denied that he was the person — We have a case out there, United States v. Brown. Are you familiar with that case? I am, Your Honor. Why doesn't that cut against you? Well, I think, Your Honor, in cases — I think the jury could — even if this Court assumes that he possessed the child pornography, which I think is where you're going with that, I don't know that that's enough for you to assume that he knew that the folders in the share folder were being shared out to another user. I don't think we have that in this case. And I just want to quickly point the Court to United States v. Bui from this circuit, where that's the only case I think I found where we're in a similar circumstance, where you have to prove it beyond a reasonable doubt and you have to show knowing. And there, that file-sharing network required someone to send a friend request, to accept a friend request, and to approve each download. We don't have that testimony in this case. All right. I see you've reserved some time for rebuttal. Let's see what the government has to say about that. Mr. Jones. May it please the Court. My name is Paul Jones, and I represent the United States. Your Honor, I believe that there is sufficient evidence to support the distribution conviction in this case. First of all, as the Court already asked Defense Counsel, I think the issue is pretty well decided. Defendant took the stand. He expressly denied sharing child pornography files, denied possessing child pornography files, denied deleting child pornography files. So the jury was, when they found him guilty, they did not believe his testimony. And I think that alone... Well, they did not believe what testimony now? That he said he did not share child pornography, he did not delete child pornography, he did not possess child pornography. All of that is in Document 65 on page 156, his denials. And so the jury, when they found he was not a credible witness, I think that alone establishes the sufficiency of the evidence for distribution as well as possession. But I looked at the cross-exam... Did you try the case? Yes, Your Honor. And I looked at the cross-examination, and you never really asked him that. You asked him questions about file sharing and how it works, but you never asked him that question on cross-examination. Did you know that when you download and participate in this program that it would go to other people? You never asked him that question. Not in that way, Your Honor. I didn't ask it because his own attorney covered it in the direct examination towards the conclusion. With what testimony now? Pardon me? His own attorney asked him what, and he covered it. He asked him, did you share child pornography files? No, I did not. Did you delete child pornography files? No, I did not. Did you possess child pornography files? No, I did not. And so that was pretty much covered on direct examination, so I did not feel I needed to cover that. So you want us to say that every time you download a file from a computer participating in one of these peer-to-peer file sharing programs, every time you do it, that automatically establishes knowledge such that you can be convicted of distribution of child pornography? Every time you do it? Every time, Your Honor, I think every time that somebody downloads a file using a file sharing program with peer-to-peer technology. That's it. That's all the government has to prove. And keeps it in their shared folder, instead of moving it outside where others cannot get it. I think that does, I think the jury is able to infer at that point that... Every time you do that, then you can be convicted of distribution? I mean, I think you got him on possession. Okay. But I'm a little, you're going to have to convince me on distribution. Well, Your Honor, I think that does do it. When he leaves it in the shared folder, and again, the important part here is we're dealing with a file sharing program that uses peer-to-peer technology. It gets rid of the middleman so that they can, so that people using the same program can all share with each other. And there's no server. Right, that's the way it works. But where's the evidence that he knew that's how it works? The, I think just... No one ever asked him, did you know that when you downloaded it, then it's, the way this thing works, it's going to go to others? No, I did not ask that, Your Honor. But I still think that the jury had a basis for finding that he was guilty of distribution. Because again, he admitted that he knew how file sharing programs work. At least, you know, downloading, installing them, and then accessing things to download. We know there was distribution here because GBI Special Agent Charles Kicklider did download two files that did contain child pornography. And the... See, I think you don't think it's possible that someone can download one of these programs and then delete it and then not know that it's going to be accessible by others. You don't think that's possible? If they download the program and then download files... Yeah, how does it work? I mean, you know, you download areas from the internet for free and then it connects you through the internet to any other person who also has the program on the computer, right? Yes, Your Honor. Okay. But you don't think that you can do that and not know that it's going to be accessible to others, that others are going to get the stuff from your computer? You don't think that's possible? I don't think that's possible, Your Honor. I think just by the nature of the program that this is the... By the nature of the program where you put that on your computer in order to access certain types of other files that other people might have. And you delete it. And you delete it and you think it's gone. If you delete it, nobody else can get into that. Well, didn't he delete it? He did by the time of the execution of the search warrant. But we know that as recently as five days before the search warrant was executed, this is in Government Exhibit 12, five days before the search warrant was executed, he was downloading child pornography files. But if he deleted it, it's not reasonable to assume that if I delete it, it's gone. It's off my computer. It's gone. I don't have it anymore. And the government's making the argument, well, even though he deleted it and it's gone, and you got him on possession now, he must have known that it was accessible to others. The government found it and they knew it was accessible to others. But I'm looking for some evidence in the record that he knew after he deleted it and it's gone, and he thought it was gone, that it was accessible to others. Your Honor, once it's deleted, it's not accessible to others. At that point, once the program is deleted, it's not accessible to others. But here on September 8th, which is the date of the downloads, it was acceptable to others. Which means that the program has to be up and running. So sometime between October 17th and the date of the execution of the search warrant, the last download was October 17th, and the date of the search warrant was October 22nd. Sometime in that range, he had to have deleted the ARIES program. Once the program is deleted, nobody can download anything from your computer. But once it's up, as it was up and running on September 8th, then other people, including the GBI special agent, can go into the program and access files and download them. You're saying, at that point, he knew it was accessible to others based on what evidence in the record? I think, Your Honor, the jury was able to infer that, based on the nature of the program that it was, that it was a file-sharing program. And his denial that he distributed file-sharing programs, although I understand I did not ask, did he knowingly distribute in cross-examination, but I think his... Why didn't you ask him that in cross-examination? Why didn't you ask him? Well, you knew, did you not, Mr. Carroll, that once you deleted it, that others would have it. You didn't ask him that, did you? No, I did not, Your Honor. I think I was asking him about FrostWire, if he knew if he was, if other, when he downloaded on FrostWire, that other people could access. He was downloading, illegally downloading legal movies, a lot of Rocky movies and similar types of movies on FrostWire, saved to a different computer. And I believe that I asked him about that, but he denied knowing. But if you had asked him that question, and he had said no, then the jury could have disbelieved him and made a credibility evaluation. But you were careful not to ask him that question. I did not ask him that question, Your Honor. That's correct. But I think still, just his denial that he ever shared child pornography, um, did you ever share child pornography? I think that there's an implicit knowledge component to that. And it wasn't like I did not unknowingly share child pornography. That wasn't his answer. He said, I never did. And I think that definitely goes towards his knowledge, even though I didn't follow up with, did you knowingly share child pornography with other persons? But I think the question on direct examination has an implicit knowledge component to it. And the jury disbelieved it. And I think they disbelieved it because the distribution, because of the nature of the program itself. It is a file sharing program where people just connect with others, with their peers. So I think the nature of the program itself, and the fact that he was familiar with peer-to-peer programs overall, using it for something that was illegal, but not the same type of content, movie downloads, then that, the jury was able to infer he knew that file sharing programs were exactly what they were, file sharing programs. We've got, we've got two cases out there that talk about distribution. And it seems to me that one of them cuts in your favor. That's United States v. Spriggs. But the other case that I think cuts against you is United States v. and I'll probably mispronounce this, Gerberwitz. Can you talk about those two cases? Talk about Spriggs and talk about Gerberwitz and why? Yes, Your Honor. Gerberwitz has a different set of facts in that this court actually found that distribution did, that distribution did not occur because the defendant emailed images to himself. And instead of making them available for anybody else. So this court did say that that does not constitute distribution. But Gerberwitz actually does, I think the language that this court put in the decision does show that, does support the government's case. And I did cite it in the brief to show that Gerberwitz actually shows that a defendant when he uses a peer-to-peer program, a peer-to-peer file sharing program, then he is actually engaged in distribution of child pornography. And so even though the holding was against the government, I think, Your Honor, it does definitely support the proposition that a file sharing program leads to the inference that somebody is actually distributing child, they're sharing child pornography and that rises to the level of distribution. And as the court commented, Spriggs, I think, does, yes, also supports the government's position that this qualifies as distribution because the... Well, what we said in Spriggs was this. Distribution occurs where a defendant posts child pornography to a publicly accessible website or makes it accessible to others by storing in a shared computer folder connected to a file sharing network. Is that what was done in this case? Yes, Your Honor. That's exactly, not the part about a publicly available website, but the part about the peer-to-peer program. That is what was done. When he downloaded child pornography files, those got downloaded into his shared folder. And then by being in the shared folder, then that made it available to others. Defendants who don't want to do this, and I've had cases where defendants don't want to distribute with others, then once they download, they move it out of the shared folder and save it to their hard drive. People on the peer-to-peer program can only get files in the shared folder. Once it's taken out of the shared folder, it's no longer accessible to other persons using that file. Similarly, going back to an earlier question... Doesn't that make it different, though, from a publicly available website? That does make it... Yeah, that's correct, Your Honor. I don't think the publicly available website here applies. That language applies. Publicly available website would be just going on the internet, and anybody could actually go there and find there's child pornography here. That's not true. Here, you have to have the program. And with a program up and running and keeping things in the shared folder, then that makes it available to others. And so I think the Spriggs case, as the Court pointed out, does work in favor of the government's argument. And I even maintain that the language in the Gribowitz case, also, and I'm probably mispronouncing that as well, also supports the government's position, because the Court talked about just emailing it to yourself is not distribution. You have to do something, take another step to make a distribution, such as using a peer-to-peer file sharing program. And again, it's not available... Once it's moved out of the shared folder, it's not available. And once the program is deleted, it's not available. And we know by September 8th, when Agent Kicklighter was downloading child pornography, that the program had to be up and running. We also know October 17th, when at least two more files of child pornography were downloaded, that the items were in the shared folder, and that at that point, the ARIES program had to be up and running. So it was sometime between after the download of those two files and the date of the execution of the search warrant, in that five-day period, ARIES was deleted, and once it's deleted, between that five-day period, nobody else could pull anything from his computer without the program. It's a file-sharing program. That's why people use it, for sharing files, including getting them from others. My time is up, so I thank the Court. All right, thank you, Mr. Jones. And Ms. Durrett, you're reserved six minutes. Thank you, Your Honor. And I'd like to start by addressing Judge Dabena and the issue of the Spriggs case. And I think Spriggs— And let me tell you this. He's conceded that it's not a publicly accessible website, but as I read Spriggs, it does read in the disjunctive, and it says, where a defendant posed child pornography to a publicly accessible website which does not apply or makes it accessible to others by storing in a shared computer folder connected to a file-sharing network. Why wouldn't that apply in this case? Well, Your Honor, I think that's a correct reading of that sentence. I think the issue that I have with Spriggs is that it's a completely different scenario. As Judge Wilson was asking earlier, there's evidence in that case that the defendant admitted that he knew he was uploading and downloading from the file. And also in Spriggs, the court is addressing the sentencing enhancement under 2G2.1 as opposed to the statute here. What we know from other cases from this circuit, Creel being one of them, the sentencing enhancement has no mens rea requirement, and the definition of distribution for that enhancement is broader. The court says it's broader than that in the statute. So what we have in Spriggs is the court saying, yes, when there's no mens rea requirement and you have to prove it by a preponderance of the evidence, if you're putting it in the folder, we can, I guess, assume that you're sharing it out. But in that case, you also have the defendant admitting that he knew he was sending the files out. He knew by putting them in the folder, they would go out to other users. So I think, you know, when you're talking about the higher mens rea requirement, that's the issue that you're going to be looking at. I did want to talk to the court. Let me stop you and ask you one last question. I'll leave you alone. The United States attorney should have asked the question on cross-examination that he failed to ask. But on direct examination, was your client asked, did you distribute child pornography? Your Honor, he was asked if he shared it, and he said no. And I think the issue, and we've kind of talked a little bit about this issue, I think it goes to the knowing requirement. And this court has said... But if he said no, couldn't a jury infer from that that he was not telling the truth? Well, Your Honor, I don't know that they could infer that, but I don't know that sharing, we don't know in this context whether that means I knew putting them in the folder meant that I was sharing out. I had that knowledge that that was happening. And because there are so many cases across the board, I wanted to talk to the court a little bit about the different file-sharing networks. Because I think one of the things the government wants us to do is make an assumption that once the files are in there, they go out. And that's why everybody in these other cases has been convicted of distribution. But in United States v. Bui, from this court, a panel of this court, the file-sharing network was GigaTribe. And in that case, you had to have a friend request. Someone had to say, hey, I want to get your files, and you had to approve it to send it out. That shows a knowing element. In Flyer, from the Ninth Circuit, LimeWire, the file-sharing program LimeWire, requires that you manually activate the file-sharing every time you turn the computer on. In Spriggs, the file-sharing network was Shariza, and it prompted you about sharing every time a file was being shared. Likewise, with Kazaa, and that's the Schaefer case out of the Tenth Circuit, the court talks about how the licensing agreement walks you through sharing files. You put the file-sharing folder on your desktop. You set permissions. You can restrict access. You can permit access. We don't have any of that testimony here. What we do have is an agent saying, it's an automatic program. The files go into the share folder, and they're automatically shared out of the share folder. When he was asked, when the agent was asked, what do you know about the public version? He said, I've never used the public version. I don't know how it works. But he was asked, well, does somebody have to be sitting in front of the computer to share a folder out? And he said, no, you don't. So this case, what we have, the evidence shows is that the files went automatically into the folder, and they went automatically out of the folder. I think we're missing the knowing component. And as much as the government would have liked to have gone back and asked that question, we don't have that evidence in this case to support that Mr. Carroll knew the files were going out. And I think that's the distinction that's important in this case. When you look at other cases from other circuits, cases like United States v. Budziak from the Ninth Circuit, and Chiaradio from the First Circuit, you have defendants who are manipulating that share file. They're either restricting access, permitting access, moving files in and out of that share folder. We don't have any testimony in this case that Mr. Carroll was doing any of that to the share folder. So I don't think that we can now assume that that's what was happening in this case. And if the court doesn't have further questions on the distribution, I did want to say one more thing about the search warrant. We did talk about the lack of probable cause in the search warrant, and we also disputed the particularity requirement stating that the search warrant was overbroad. And I just want to give the court an example of one of the paragraphs in that search warrant. It stated that law enforcement officers were permitted to search for books, magazines, articles, newspapers, photographs, negative slides, movies, albums, drawings, audiotapes, videotapes, personal letters, diaries, paintings, photographic equipment, et cetera, that would tend to show contact with minors or that would constitute evidence of a violation of the statute. And I certainly think that would allow for general rummaging through Mr. Carroll's house. Thank you, Your Honor. All right. Thank you, Ms. Tourette. And I see that you were appointed by the court to represent Mr. Carroll, and the court appreciates your service. Thank you. Your Honor. This case was very well argued. She's good. She's very good. Mm-hmm. She did a good job. Yeah.